UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL DOUCETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:18 CV 44 ACL |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Plaintiff Michael Doucette brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Doucette's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

## I. Procedural History

Doucette filed his application for benefits on August 14, 2014, claiming that he became unable to work on February 1, 2014. (Tr. 276-82, 283-88.) In his Disability Report, Doucette alleged disability due to the following conditions: ruptured and herniated disc in his neck and back, chest pains, black spots on his lungs, constant headaches from a disc in his neck, bad knees, numbness in his right leg and left arm, high blood pressure, and depression. (Tr. 311.) Doucette was 45 years of age on his alleged onset of disability. (Tr. 28.) His applications were denied initially. (Tr. 130-36.) Doucette's claims were denied by an ALJ on August 4, 2017, after a hearing. (Tr. 15-30.) On April 27, 2018, the Appeals Council denied Doucette's claim for review. (Tr. 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Doucette argues that the ALJ's "credibility finding is rife with error and does not follow the Agency's required two-step analysis pursuant to 20 C.F.R. § 404.1529, requiring reversal." (Doc. 22 at 3.)

## II. The ALJ's Determination

The ALJ first found that Doucette met the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 17.) Doucette had not engaged in substantial gainful activity since February 1, 2014, the alleged onset date. *Id.* In addition, the ALJ concluded that Doucette has the following severe impairments: obesity, lumbar and cervical degenerative disc disease, degenerative joint disease of the knee, depression, and an unspecified anxiety disorder. (Tr. 18.) The ALJ found that Doucette did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments. (Tr. 19.)

As to Doucette's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can lift or carry up to 20 pounds occasionally but cannot perform any frequent lifting or carrying. He can sit for 6 hours in an 8-hour workday and, throughout an 8-hour workday, can stand/walk for 15 minutes at a time and 2 hours total. He cannot kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. He can stoop and balance occasionally. He can perform occasional reaching with the dominant upper extremity and frequent reaching with the non-dominant upper extremity. He should avoid exposure to hazards such as dangerous machinery and unprotected heights. Additionally, the claimant is limited to performing simple routine tasks throughout the workday.

(Tr. 22.)

The ALJ found that Doucette was unable to perform any past work, but was capable of performing other jobs existing in significant numbers in the national economy, such as addresser, call out operator, and telephone quotation clerk. (Tr. 28-29.) The ALJ therefore concluded that Doucette was not under a disability, as defined in the Social Security Act, from February 1, 2014, through the date of the decision. (Tr. 29.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on August 14, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on August 14, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 30.)

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is

> based upon a proper hypothetical question which sets forth the
> claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social

Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).  "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id*.  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant

numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal

the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Doucette challenges the ALJ's evaluation of Doucette's subjective complaints or credibility.[2] In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of his analysis of Doucette's subjective complaints are based on substantial evidence.

Doucette testified that he is unable to work due to a combination of limited mobility and the effects his limited mobility has on his mental health. (Tr. 61.) He complained of constant low back and neck pain, which he described as burning in nature, and progressively worsening

---

[2]As noted by Defendant, Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the "regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

since 2014. (Tr. 62.) Doucette testified that his pain extends all the way from his head down to his right lower extremity. *Id.* He also reported experiencing numbness in his right upper extremity two to three days a week. (Tr. 66.) Doucette testified that he can sit for no more than a half hour, lift no more than a gallon of milk without causing serious pain, and walk no more than a quarter mile. *Id.* He stated that he has two or three bad days per week, and that he spends about 80 percent of those days lying on the couch. *Id.*

The ALJ first reviewed the objective medical evidence regarding Doucette's physical impairments and found that it was not entirely consistent with Doucette's subjective allegations. (Tr. 23.) Although the ALJ may not rely solely on objective medical evidence to discount a claimant's subjective symptoms, it is entirely proper for the ALJ to consider the objective medical evidence in assessing a claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *5; *Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing subjective complaints).

In doing so, the ALJ first noted the lack of orthopedic treatment and lack of any "regular, contemporaneous complaints of knee pain throughout Doucette's pursuit of medical treatment" despite his claims of having bad knees since 2000. (Tr. 23.) He also cited the 2014 consultative examination of Kelly Sandri, M.D., finding no evidence to support a significant degenerative joint disease in the knees. (Tr. 23, 431.) Doucette ambulated with a symmetric and non-limping gait and exhibited full range of motion without tenderness. *Id.*

With regard to Doucette's neck and back pain, the ALJ acknowledged that the record establishes the presence of multi-level lumbar and cervical degenerative disc disease based on various MRIs dating back to 2014, as well as some evidence of decreased range of motion and

since 2014. (Tr. 62.) Doucette testified that his pain extends all the way from his head down to his right lower extremity. *Id.* He also reported experiencing numbness in his right upper extremity two to three days a week. (Tr. 66.) Doucette testified that he can sit for no more than a half hour, lift no more than a gallon of milk without causing serious pain, and walk no more than a quarter mile. *Id.* He stated that he has two or three bad days per week, and that he spends about 80 percent of those days lying on the couch. *Id.*

The ALJ first reviewed the objective medical evidence regarding Doucette's physical impairments and found that it was not entirely consistent with Doucette's subjective allegations. (Tr. 23.) Although the ALJ may not rely solely on objective medical evidence to discount a claimant's subjective symptoms, it is entirely proper for the ALJ to consider the objective medical evidence in assessing a claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *5; *Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing subjective complaints).

In doing so, the ALJ first noted the lack of orthopedic treatment and lack of any "regular, contemporaneous complaints of knee pain throughout Doucette's pursuit of medical treatment" despite his claims of having bad knees since 2000. (Tr. 23.) He also cited the 2014 consultative examination of Kelly Sandri, M.D., finding no evidence to support a significant degenerative joint disease in the knees. (Tr. 23, 431.) Doucette ambulated with a symmetric and non-limping gait and exhibited full range of motion without tenderness. *Id.*

With regard to Doucette's neck and back pain, the ALJ acknowledged that the record establishes the presence of multi-level lumbar and cervical degenerative disc disease based on various MRIs dating back to 2014, as well as some evidence of decreased range of motion and

muscle spasm on examination. (Tr. 23, 404-06, 460, 468.) He found, however, that the medical evidence as a whole did not support the presence of a disabling back or neck impairment. The ALJ cited the following evidence: an April 2015 note characterizing Doucette's degenerative disc disease as "stable" (Tr. 459); 2016 imaging studies revealing no progression of degenerative changes (Tr. 439, 468, 592); examinations consistently finding a normal gait (Tr. 431, 433, 438, 442, 459, 504, 535); no evidence to substantiate Doucette's complaints of nerve damage in the neck; lack of consistent findings of diminished reflexes or sensory deficits (Tr. 439, 549, 553, 557); lack of atrophy with associated muscle weakness; and findings of full motor strength in two separate consultative examinations performed almost two years apart (Tr. 439, 492-93, 454, 458). (Tr. 23-24.)

The ALJ noted that Doucette has received conservative treatment, with little specialist treatment. (Tr. 24.) He stated that neurosurgeon Charles Bondurant, M.D., did not recommend surgery after his April 2016 consultation. (Tr. 24, 439.) Dr. Bondurant indicated that Doucette had some "relatively small" degenerative changes in the cervical spine that did not appear to be "overly prominent." *Id.* No assistive devices have been prescribed. (Tr. 24.) Instead, Doucette has been treated with medication. The ALJ properly considered Doucette's conservative treatment history in determining the consistency of Doucette's complaints with the record. *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged").

Doucette suggests that he did not receive medical care because he did not have insurance

and lacked the financial resources to pay for care. In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. *See Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989). In this matter, however, as the ALJ noted, the record does not reflect that Doucette sought treatment offered to indigents (Tr. 25). *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents).

The ALJ found that the medical record reflects that Doucette's medications have been more effective than Doucette suggested at the hearing. (Tr. 24.) For example, in August 2014, Doucette reported that he was "satisfied with his current pain medication regimen," and reported a pain level of only 3 to 4 out of 10, compared to 9 to 10 out of 10 without medication (Tr. 411); in October 2016, Doucette reported only intermittent lumbar spine pain and indicated his pain was otherwise "well controlled," (Tr. 562); in December 2016, Doucette reported his medication patches were "very helpful," he was able to sleep through the night, and he was taking less of his narcotic medication (Tr. 557); and in March 2017, Doucette indicated that his neck pain had "almost disappeared" since he started using pain patches (Tr. 549). (Tr. 24.) "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)). The ALJ's finding that Doucette's statements made to providers reveal a far more effective pain medication regimen than described by Doucette at the hearing is supported by the record.

Doucette takes issue with the ALJ's remarks regarding Doucette's history of narcotic abuse, noting that there was no evidence of such abuse during the relevant period. The ALJ stated that Doucette's use of narcotic medications was "somewhat concerning given his history of opioid addiction and Methadone abuse as discussed above." (Tr. 24.) He further cited Doucette's statement to a physician in August 2014 that he had been "borrowing" narcotics from a "friendly neighbor," at one point. (Tr. 24, 411.) The ALJ did not misstate the evidence and did not find that Doucette was abusing narcotics after his alleged onset of disability. Although this evidence was not particularly relevant to Doucette's subjective complaints, the ALJ did not commit reversible error in mentioning medical providers' references to Doucette's past drug abuse.

As to Doucette's daily activities, the ALJ noted that Doucette was able to prepare simple meals, perform light cleaning and laundry, drive, go out alone, use public transportation, shop a couple times a week, access food banks, manage his finances, read, watch television, and use the internet. (Tr. 26, 319-21.) Significantly, the ALJ noted that Doucette reported in his September 2014 Function Report that he still tried to go surfing two to three times a year. (Tr. 26, 322.) Doucette objects to the ALJ's statement, arguing that Doucette also indicated in his Function Report that he "often can't [surf] because of back/neck pain;" however, the fact that Doucette still attempted this challenging physical activity after his alleged onset of disability is inconsistent with his allegations of disabling pain. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding [his] activities of daily living also raised legitimate concerns about [his] credibility.").

The ALJ also found that the record failed to support a finding of total disability based

upon Doucette's mental impairments. (Tr. 25.) Although Doucette does not directly challenge this finding, the Court finds that this determination is supported by substantial evidence. The ALJ stated that, despite Doucette's claim of a 40-year history of psychological problems, the record contains little evidence of mental health treatment. *Id.* The ALJ noted that records from the mental health treatment he did receive reveal improvement of symptoms with medication. (Tr. 25, 442, 449, 451, 456, 459, 529, 532, 534-35.) Additionally, the ALJ pointed out that, despite Doucette's allegations of difficulty being around people, his statements indicate he was able to go to food banks, use public transportation, go out alone, go shopping, and live with friends. (Tr. 26.)

In conclusion, the Court finds that the ALJ's evaluation of Doucette's subjective complaints is based on substantial evidence and is consistent with regulations and case law. The ALJ acknowledged that Doucette's impairments would cause pain and limitations, and took this into consideration in limiting him to a reduced range of sedentary work. In determining Doucette's RFC, the ALJ considered the evidence discussed above, as well as medical opinion evidence from consultative physicians Dr. Sandri and Dr. Patrick Williams. (Tr. 27-28.)

The vocational expert testified that an individual with the RFC found by the ALJ would be capable of performing other work existing in significant numbers in the national economy. The vocational expert's testimony, therefore, constituted substantial evidence supporting the Commissioner's denial of benefits. *See LaCroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006).

An ALJ's decision is not to be disturbed "'so long as the...decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.'" *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528

F.3d 1113, 1115 (8th Cir. 2008)).  Although Doucette articulates why a different conclusion might have been reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above.  *See Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (concluding that "[w]hile it was not surprising that in an administrative record which exceeds 1,500 pages, [claimant] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's RFC determination).

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of September, 2019.